O

# United States District Court
# Central District of California

| | |
|---|---|
| MANUEL WOMANDRESS and SHARON WOMANDRESS,<br><br>Plaintiffs,<br><br>v.<br><br>SPECIALIZED LOAN SERVICING, LLC and DOES 1-50, inclusive,<br><br>Defendants. | Case № 5:16-cv-01007-ODW (KKx)<br><br>**ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER [17]** |

## I.   INTRODUCTION

On July 6, 2016, Plaintiffs Manuel and Sharon Womandress applied ex parte for a temporary restraining order enjoining Defendant Specialized Loan Servicing LLC from proceeding with a foreclosure sale on July 8, 2016.  (ECF No. 17.) Defendant opposed.  (ECF Nos. 20, 21.)  For the reasons discussed below, the Court **DENIES** Plaintiffs' application.  (ECF No. 17.)

## II.   FACTUAL BACKGROUND

Plaintiffs are the owners of a house located in Temecula, California.  (First Am. Compl. ("FAC") ¶ 1.)  On March 20, 2007, Plaintiffs received a loan from Residential Mortgage Capital in the amount of $799,950 to purchase this house.  (Req. for Judicial

Notice ("RJN"), Ex. 1, ECF No. 21.)[1] It is unclear what relationship Defendant has, if any, to the original lender, but at any rate, Defendant is now servicing this loan. (*See* FAC ¶ 7; RNJ, Exs. 2–3.) Plaintiffs allege that Defendant "intentionally overstated Plaintiffs' income on the loan application," failed to make numerous disclosures required under the Truth in Lending Act, failed to provide meaningful loan modification assistance, and dual-tracked the mortgage in violation of the California Homeowner Bill of Rights Act. (*Id.* ¶¶ 12, 14–15, 24, 34–35.) The FAC lacks any specific factual details surrounding these allegations.

On November 12, 2015, Defendant recorded a Notice of Default at the Riverside County Recorder's Office, which stated that Plaintiffs owed $169,908.49 on the mortgage. (RJN, Ex. 2.) On March 17, 2016, Defendant recorded a Notice of Trustee's Sale, giving notice that it intended to hold a trustee's sale on April 14, 2016. (*Id.* Ex. 3.) It appears that the trustee's sale was rescheduled for July 8, 2016.

On April 11, 2016, Plaintiffs filed this action in the Riverside Superior Court. (ECF No. 1.) On May 13, 2016, Defendant removed the case to federal court. (*Id.*) On July 3, 2016, Plaintiffs filed a FAC, in which they assert the following causes of action: (1) violation of California Business and Professions Code section 17200 ("UCL"); (2) breach of the implied covenant of good faith and fair dealing; and (3) violation of the California Homeowners Bill of Rights Act. (ECF No. 15.) On July 6, 2016, Plaintiffs filed this ex parte application for a temporary restraining order, seeking to enjoin the impending foreclosure sale. (ECF No. 17.) The following day, Defendant filed a timely opposition. (ECF Nos. 20–21.) That ex parte application is now before the Court for consideration.

---

[1] The Court grants Defendant's Request for Judicial Notice as to the Deed of Trust, the Notice of Default, and the Notice of Trustee's Sale, all of which are title documents that were recorded at the Riverside County Recorder's Office. *See* Fed. R. Civ. P. 201(b); *Ganesan v. GMAC Mortgage, LLC*, No. C 12-1935 MEJ, 2012 WL 4901440, at *1 & n.1 (N.D. Cal. Oct. 15, 2012); *Heuslein v. Chase Bank U.S.A., N.A.*, No. 09-CV-1292-IEG RBB, 2009 WL 3157484, at *3 (S.D. Cal. Sept. 24, 2009); *Harlow v. LSI Title Agency, Inc.*, No. 2:11-CV-01775-PMP, 2012 WL 5425722, at *2 (D. Nev. Nov. 6, 2012).

### III. LEGAL STANDARD

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (emphasis in original) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). To prevail, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm absent preliminary injunctive relief; (3) that the balance of equities tips in the moving party's favor; and (4) that preliminary injunctive relief is in the public interest (the "*Winter* factors"). *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995) ("The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction."). "Under *Winter*, plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (original emphasis). In the Ninth Circuit, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can [also] support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132, 1135 (holding that the "sliding scale" test remains viable "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest").

### IV. DISCUSSION

The Court concludes that Plaintiffs do not clearly show that that they have met the *Winter* factors. Thus, the Court declines to issue the requested TRO.

**A. Likelihood of Prevailing on Merits**

    **1. UCL Claim**

"The UCL does not proscribe specific activities," but instead "'borrows' violations of other laws and treats them as unlawful practices that the unfair

competition law makes independently actionable." *Puentes v. Wells Fargo Home Mortgage, Inc.*, 160 Cal. App. 4th 638, 643–44 (2008) (citations omitted); *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Here, Plaintiffs allege that the predicate violation was the failure to make various disclosures as required under the Truth in Lending Act during the original loan application process. (FAC ¶ 14.)

Even assuming that Defendant was the original lender, Plaintiffs' claim for violation of the UCL is likely barred by the statute of limitations. The UCL has a four-year statute of limitations. Cal. Bus. & Prof. Code § 17208. As Plaintiffs' original loan application was processed sometime in or before 2007, the deadline for Plaintiffs to file a claim under the UCL was in 2011—approximately five years ago. Moreover, the burden of proving delayed discovery so as to justify a later filing rests with the plaintiff, *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005), and Plaintiffs here do not allege any facts showing that the discovery rule should apply. Thus, Plaintiffs have not met their burden of demonstrating a clear likelihood of success on the merits of this claim.

**2.  Breach of Implied Covenant of Good Faith and Fair Dealing**

Plaintiffs allege that Defendant violated the implied covenant of good faith and fair dealing by withholding certain required disclosures during the loan origination and failing to advise Plaintiffs that they may be eligible for a loan modification. (FAC ¶ 24.) As Defendant notes, the statute of limitations for this a claim is also four years. *Ladd v. Warner Bros. Entm't*, 184 Cal. App. 4th 1298, 1309 n.7 (2010). Here, the withholding of disclosures at loan origination occurred, if at all, in 2007, and Plaintiff has not alleged any facts showing delayed discovery. Thus, to the extent this claim is based on the withholding of such disclosures, it is likely barred by the statute of limitations.

To the extent it is premised on the failure to advise Plaintiffs that they may be eligible for a loan modification, it also fails. "The implied covenant of good faith and

fair dealing is limited to assuring compliance with the *express terms* of the contract, and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004). Plaintiffs do not point to any provision in the Deed of Trust or the original loan contract requiring Defendant to inform Plaintiffs of the option of modifying the loan. Thus, Plaintiffs have failed to show a likelihood of success on this claim.

### 3. Homeowner Bill of Rights Act (HBOR)

Finally, Plaintiffs allege that Defendant violated HBOR by failing to provide adequate loan modification assistance to them, and engaging in dual-tracking (i.e., simultaneously processing Plaintiffs' loan modification application while pushing the home through foreclosure). (FAC ¶¶ 29–35.)

With respect to the loan modification assistance, Plaintiffs allege that Defendant made repeated requests for Plaintiffs to resend documents to them, that these requests were designed simply to thwart the loan modification process, and that thus constituted a failure to provide meaningful foreclosure assistance. While Plaintiffs cite over seventeen different statutes in their FAC, they do not show how Defendant's conduct violates those provisions. Given the myriad statutes Plaintiffs cite, the Court declines to do this work for Plaintiffs.

With respect to the dual-tracking allegation, Plaintiffs have not alleged sufficient facts to show that they are entitled to relief. HBOR was designed to eliminate the practice of dual-tracking. *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 950 (2014) (citing Cal. Civ. Code §§ 2923.6, 2924.18). Thus, HBOR provides: "If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending." Cal. Civ. Code § 2923.6(c). If a complete application has been submitted, a trustee may not conduct a trustee's sale until one of

the following occurs: "(1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification . . . . (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer. (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification." *Id.* § 2923.6(c)(1)–(3). A court may enjoin an impending trustee's sale if a loan servicer fails to comply with these requirements. *Id.* § 2924.12(a)(1).

In support of their dual-tracking claims, Plaintiffs make the conclusory assertion that they were "in the loan modification process" and were "made aware of active foreclosure sale date [sic]." (FAC ¶ 35.) This simply paraphrases the language of the statute; it provides no facts at all as to the specific loan modification application that Plaintiffs may have submitted or the foreclosure process for Plaintiffs' specific home, and thus does not show how Defendant violated section 2923.6.

For these reasons, the Court concludes that Plaintiffs have not shown a likelihood of prevailing on the merits of any of their claims.

**B.     Immediate and Irreparable Harm**

Plaintiffs argue that the foreclosure of their property constitutes an immediate and irreparable harm. "Several courts have determined that the loss of one's residence through foreclosure constitutes irreparable injury." *De Vico v. U.S. Bank*, No. CV 12-08440 MMM FFMX, 2012 WL 10702854, at *5 (C.D. Cal. Oct. 29, 2012); *Nichols v. Deutsche Bank Nat. Trust Co.*, No. CIV. 07CV2039-L NLS, 2007 WL 4181111, at *3 (S.D. Cal. Nov. 21, 2007); *Dumas v. First N. Bank*, No. CIV.S-10-1523 LKK/DA, 2011 WL 567358, at *2 (E.D. Cal. Feb. 15, 2011); *Lane v. CitiMortgage, Inc.*, No. 2:14-CV-02295-KJM, 2014 WL 6670648, at *6 (E.D. Cal. Nov. 21, 2014) ("Loss of a principal residence is normally sufficient to establish irreparable harm."); *but see Mandrigues v. World Sav., Inc.*, No. C 07-4497 JF (RS), 2009 WL 160213, at *3 (N.D. Cal. Jan. 20, 2009) ("[W]hether a particular foreclosure constitutes irreparable harm turns in part on the reasons for foreclosure.").

1    Defendant points out that foreclosure proceedings were initiated "months" ago, and argues that the delay in bringing this application "implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985). However, Defendant does not show when Plaintiffs received notice of the date of this particular foreclosure sale, and thus the Court cannot conclude that Plaintiffs were in fact tardy in bringing this Motion. Thus, the Court concludes that this prong of the *Winter* test is met.

C.   **Equities and Public Interest**

Plaintiffs do not make any showing that the equities or the public interest are in their favor, and the Court concludes that neither factor is satisfied. While there is a public interest in requiring loan service providers to comply with disclosure and loan modification assistance requirements, the dearth of evidence or even specific factual allegations supporting Plaintiffs' claims leads the Court to believe that Plaintiffs' request for a TRO is simply a stall tactic. *See Lane*, 2014 WL 6670648, at *6. Indeed, it appears that this foreclosure sale was a long time in the making: a notice of default was recorded on Plaintiffs' property almost eight months ago, and based on the outstanding amount stated therein (over $169,000), it appears that Plaintiffs were in default for quite some time before that. (RJN, Ex. 2.) Moreover, Defendant notified Plaintiffs at least as early as March 17, 2016, that they intended to sell the property, and it appears that the sale was rescheduled at least once. (*Id.* Ex. 3.) Without any plausible allegations that Defendant engaged in unlawful conduct during the loan or foreclosure process, it appears that this TRO application is simply a last-ditch attempt to keep the foreclosure process from coming to a head. While ejection from their home is certainly a distressing prospect, "no lender should be expected to indefinitely forgive payments to satisfy a debt that now totals more than $[9]00,000." *Lane*, 2014 WL 6670648, at *6. Thus, the Court cannot conclude that either the equities or the public interest are in Plaintiffs' favor.

/ / /

## V.   CONCLUSION

Because three of the four *Winter* factors do not favor Plaintiffs, the Court **DENIES** Plaintiffs' Ex Parte Application for a Temporary Restraining Order.  (ECF No. 17.)

**IT IS SO ORDERED.**

July 8, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**